UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X     Case No.: 1:19-cv-00683-GTS-CFH

SAMANTHA GOOD and DARREN LUMBARD,

                Plaintiffs,

      -against-                          **AMENDED COMPLAINT**
                                            **JURY TRIAL DEMANDED**

PEAK RESORTS, INC. and HUNTER MOUNTIAN
SKI BOWL, INC.,

                Defendant.

-------------------------------------------------------------X

      Plaintiffs, SAMANTHA GOOD and DARREN LUMBARD, by and through their attorneys, PRONER & PRONER, hereby complain and allege against the defendant as follows:

## **PARTIES**

      1.      The plaintiff, SAMANTHA GOOD, is and was at all times hereinafter mentioned, domiciled in and a citizen of the State of New Jersey residing at 31 Oakridge Lane, Watchung, New Jersey.

      2.      The plaintiff, DARREN LUMBARD, is and was at all times hereinafter mentioned, domiciled in and a citizen of the State of New Jersey residing at 31 Oakridge Lane, Watchung, New Jersey.

      3.      The defendant, PEAK RESORTS, INC., is and was at all times hereinafter mentioned a Missouri business corporation, existing under and by virtue of the laws of Missouri, with its principal place of business at 17409 Hidden Valley Drive, Wildwood, Missouri 63015.

4.      The defendant, HUNTER MOUNTAIN SKI BOWL, INC., is and was at all times hereinafter mentioned a New York business corporation, existing under and by virtue of the laws of New York with its principal place of business at 64 Klein Avenue, Hunter, New York 12442.

5.      The defendant, HUNTER MOUNTAIN SKI BOWL, INC. is and was at all times hereinafter mentioned a subsidiary corporation of the defendant, PEAK RESORTS, INC.

## JURISDICTION, VENUE AND JURY DEMAND

6.      That this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 (a)(1) since there is complete diversity of citizenship between the plaintiffs and the defendant and it is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.00.

7.      That this lawsuit arises out of an accident that took place on the 19th day of January, 2019 at the ski and snowboard resort known as Hunter Mountain, 64 Klein Avenue, Hunter, New York.

8.      This action is venued in the United States District Court for the Northern District of  New York pursuant to the provisions of 28 U.S.C. §1391(b)(2).

9.      The plaintiff demands a trial by jury.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF, SAMANTHA GOOD

10.      That at all times herein mentioned, the defendant, PEAK RESORTS, INC., was the owner of a ski and snowboard resort known as Hunter Mountain which is located at 64 Klein Avenue, Hunter, New York.

2

11.     That at all times herein mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., was the owner of a ski and snowboard resort known as Hunter Mountain which is located at 64 Klein Avenue, Hunter, New York.

12.     That at all times hereinafter mentioned, the defendant, PEAK RESORTS, INC., was doing business as Hunter Mountain at a ski and snowboard resort located at 64 Klein Avenue, Hunter, New York to which it invited the public at large to ski and snowboard for a fee.

13.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., was doing business as Hunter Mountain at a ski and snowboard resort located at 64 Klein Avenue, Hunter, New York to which it invited the public at large to ski and snowboard for a fee.

14.     That at all times herein mentioned, the defendant, PEAK RESORTS, INC., operated and maintained the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

15.     That at all times herein mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., operated and maintained the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

16.     That at all times hereinafter mentioned, the defendant, PEAK RESORTS, INC., managed the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

3

17.     That at all times hereinafter mentioned, the defendant, HUNTER MOUTAIN SKI BOWL, INC., managed the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

18.     That at all times hereinafter mentioned, the defendant, PEAK RESORTS, INC., operated the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

19.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., operated the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

20.     That at all times hereinafter mentioned, the defendant, PEAK RESORTS, INC., controlled the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

21.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., controlled the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

22.     That at all times hereinafter mentioned, the defendant, PEAK RESORTS, INC., had a duty to maintain the aforementioned Hunter Mountain, including all of the chairlifts, chairlift

exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

23.     That at all times hereinafter mentioned, the defendant, HUNTER MOUTAIN SKI BOWL, INC., had a duty to maintain the aforementioned Hunter Mountain, including all of the chairlifts, chairlift exit ramps and the fences immediately adjacent thereto including the Broadway quad lift (B lift) exit ramp and the fence immediately adjacent to said ramp.

24.     That at all times hereinafter mentioned the Broadway Quad (B-lift) exit ramp at Hunter Mountain was approximately ten to fifteen feet off the ground and supported by concrete pedestals, rock formations, and other manmade and/or natural surfaces.

25.     That at all times hereinafter mentioned, there was an approximately ten to fifteen foot drop off on both sides of the Broadway Quad (B-lift) exit ramp at Hunter Mountain.

26.     That at all times hereinafter mentioned, the defendant, PEAK MOUNTAIN RESORTS, INC., knew, or through the exercise of reasonable care shoould have known, that skiers and snowboarders very often ski or snowboard off path, fall, or have other difficulties aligning themselves and skiing or snowboarding without incident to the adjoining trails when disembarking and exiting  from chairlifts.

27.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., knew, or through the exercise of reasonable care should have known, that skiers and snowboarders very often ski or snowboard off path, fall, or have other difficulties aligning themselves and skiing or snowboarding without incident to the adjoining trails when disembarking and exiting  from chairlifts.

28.     That at all times hereinafter mentioned there was wooden fencing on the sides of the Broadway Quad (B-lift) exit ramp at Hunter Mountain.

29.     That at all times hereinafter mentioned, the defendant, PEAK MOUNTAIN RESORTS, INC., knew, or through the exercise of reasonable care should have known, that the wooden fencing on the right side of the Broadway Quad (B-lift) exit ramp at Hunter Mountain in the area of the rock formation that served as part of the foundation for the end of the ramp was designed, constructed and/or maintained in such a manner that it would not prevent skiers and snowboarders from falling off the side of the exit ramp.

30.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., knew, or through the exercise of reasonable care should have known, that the wooden fencing on the right side of the Broadway Quad (B-lift) exit ramp at Hunter Mountain in the area of the rock formation that served as part of the foundation for the end of the ramp was designed, constructed and/or maintained in such a manner that it would not prevent skiers and snowboarders from falling off the side of the exit ramp.

31.     That at all times hereinafter mentioned, the defendant, PEAK MOUNTAIN RESORTS, INC., knew, or through the exercise of reasonable care should have known, that the wooden fencing on the right side of the Broadway Quad (B-lift) exit ramp at Hunter Mountain in the area of the rock formation that served as part of the foundation for the end of the ramp had a missing rail creating a dangerous condition that was far more dangerous than the usual dangers that are inherent in the sport of skiing and snowboarding.

32.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., knew, or through the exercise of reasonable care should have known, that the wooden fencing on the right side of the Broadway Quad (B-lift) exit ramp at Hunter Mountain in the area of the rock formation that served as part of the foundation for the end of the ramp had a

missing rail creating a dangerous condition that was far more dangerous than the usual dangers that are inherent in the sport of skiing and snowboarding.

33.     That at all times hereinafter mentioned, the defendant, PEAK MOUNTAIN RESORTS, INC., knew, or through the exercise of reasonable care should have known, that the wooden fencing on the right side of the Broadway Quad (B-lift) exit ramp at Hunter Mountain in the area of the rock formation that served as part of the foundation for the end of the ramp did not have enough railings to prevent skiers and snowboarders from falling off the side of the exit ramp.

34.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., knew, or through the exercise of reasonable care should have known, that the wooden fencing on the right side of the Broadway Quad (B-lift) exit ramp at Hunter Mountain in the area of the rock formation that served as part of the foundation for the end of the ramp did not have enough railings to prevent skiers and snowboarders from falling off the side of the exit ramp.

35.     That at all times hereinafter mentioned, the defendant, PEAK MOUTAIN RESORTS, INC., knew, or through the exercise of reasonable care, knew or should have known that the Broadway Quad (B-lift) exit ramp and fencing on the sides of said ramp at Hunter Mountain Resort were designed, constructed and/or maintained in such a manner that that they created a condition that was far more dangerous than the usual dangers that are inherent in the sport of skiing and snowboarding.

36.     That at all times hereinafter mentioned, the defendant, HUNTER MOUNTAIN SKI BOWL, INC., knew, or through the exercise of reasonable care, knew or should have known that the Broadway Quad (B-lift) exit ramp and fencing on the sides of said ramp at Hunter

Mountain Resort were designed, constructed and/or maintained in such a manner that that they created a condition that was far more dangerous than the usual dangers that are inherent in the sport of skiing and snowboarding.

37.    That at all times herein mentioned, the plaintiff, SAMANTHA GOOD, was lawfully and properly present at Hunter Mountain having purchased a lift ticket that permitted her to ski and/or snowboard at said resort on the 19th day of January,2019.

38.    That on the 19th day of January,2019, the plaintiff, SAMANTHA GOOD, fell while exiting the Broadway Quad (B-lift) chairlift on a snowboard at Hunter Mountain.

39.     That on the 19th day of January, 2019, the plaintiff, SAMANTHA GOOD, fell through the fencing and off of the right side of the exit ramp that was adjacent to the rock formation that supported the end of the ramp while exiting the Broadway Quad (B-lift) chairlift on a snowboard at Hunter Mountain.

40.    That the plaintiff, SAMANTHA GOOD, was caused to fall approximately ten to fifteen feet as she was exiting the Broadway quad lift (B-lift) on a snowboard because the defendant, PEAK RESORTS, INC., had designed, constructed and/or maintained the exit ramp and adjacent fencing in such a manner that it caused, allowed and permitted a condition to exist that was far more dangerous than the usual dangers that are inherent in the sport of skiing and snowboarding.

41.    That the plaintiff, SAMANTHA GOOD, was caused to fall approximately ten to fifteen feet as she was exiting the Broadway quad lift (B-lift) on a snowboard because the defendant, HUNTER MOUNTAIN SKI BOWL, INC., had designed, constructed and/or maintained the exit ramp and adjacent fencing in such a manner that it caused, allowed and permitted a condition to exist that was far more dangerous than the usual dangers that are inherent

in the sport of skiing and snowboarding.

42.   The defendant, PEAK RESORTS, INC., was reckless, careless and negligent in causing a drop off of approximately ten to fifteen feet to exist on a chairlift exit ramp; in designing, constructing and/or maintaining a chairlift exit ramp in such a manner that it unreasonably increased the risks that are inherent to the sport of skiing and snowboarding; in designing and/or maintaining a chairlift exit ramp in such a manner that it was not as safe as it appeared to be; in designing, constructing and/or maintaining a fence on a chair lift ramp in such a manner that it knew, or through the exercise of reasonable care should have known, the fence would not prevent skiers and snowboarders from falling approximately ten to fifteen feet off the side of the exit ramp; in causing the fencing immediately adjacent to a chairlift exit ramp to be and remain in a broken and unsafe condition; in causing, allowing and permitting the fencing immediately adjacent to the chairlift exit ramp to be missing a railing; in designing, constructing and/or maintaining the chairlift exit ramp in such a manner that it concealed a dangerous drop off;  in failing to post any warnings of a dangerous drop off; in failing to repair, replace or erect a barrier to prevent skiers and snowboarders from sliding through a missing fence railing on the side of a chairlift exit ramp; in violating New York State General Obligations Law §18-101 through §18-106; New York State Labor Law §867, 12 NYCRR §§32.1-32.13 and 54.1-54.7 and the defendant was otherwise reckless, careless and negligent in the premises.

43.   The defendant, HUNTER MOUNTAIN SKI BOWL INC., was reckless, careless and negligent in  causing a drop off of approximately ten to fifteen feet to exist on a chairlift exit ramp; in designing, constructing and/or maintaining a chairlift exit ramp in such a manner that it unreasonably increased the risks that are inherent to the sport of skiing and snowboarding; in designing and/or maintaining a chairlift exit ramp in such a manner that it was not as safe as it

appeared to be; in designing, constructing and/or maintaining a fence on a chair lift ramp in such a manner that it knew, or through the exercise of reasonable care should have known, the fence would not prevent skiers and snowboarders from falling approximately ten to fifteen feet off the side of the exit ramp; in causing the fencing immediately adjacent to a chairlift exit ramp to be and remain in a broken and unsafe condition; in causing, allowing and permitting the fencing immediately adjacent to the chairlift exit ramp to be missing a railing; in designing, constructing and/or maintaining the chairlift exit ramp in such a manner that it concealed a dangerous drop off;  in failing to post any warnings of a dangerous drop off; in failing to repair, replace or erect a barrier to prevent skiers and snowboarders from sliding through a missing fence railing on the side of a chairlift exit ramp; in violating New York State General Obligations Law §18-101 through §18-106; New York State Labor Law §867, 12 NYCRR §§32.1-32.13 and 54.1-54.7 and the defendant was otherwise reckless, careless and negligent in the premises

44.    That by reason of the negligence of the defendant, PEAK RESORTS INC. its agents, servants and/or employees as hereinbefore alleged, the plaintiff suffered injuries in and about her body and limbs including but not limited to a severe spinal cord injury which has left the plaintiff completely paralyzed from the waist down; a T-12 burst injury; hemorrhage along the anterior longitudinal ligament at the level of T-10-L1 and the posterior elements of T12; disruption of the anterior and posterior longitudinal ligaments and ligamentum flavum at the T-12 level; bilateral perched facets at T11 and T12 with widening of the interspinous space; left 5th, 6th, 7th, 8th and 9th rib fractures; deep vein thrombosis of the left soleal vein; thrombophilia; chronic urinary tract infections; neuropathic pain; significant psychological stress and disruption in cognitive processing; post-traumatic stress disorder; neurogenic bladder and bowel; the plaintiff has been forced to undergo numerous painful medical procedures including but not limited to

decompression and open treatment of thoracolumbar fracture dislocation of the T11-T12 level, posterior arthrodesis fusion, T12-l1, T11-T12, T10-Tll, posterior instrumentation T10, T11,T12 and L1; allograft and autograft; she has suffered shock to her nerves and nervous system, accompanied by great physical pain and mental anguish; has been confined to her bed and home and has been unable to engage in her usual activities or to attend to her employment; has been compelled to seek constant medical aid and attention and will be so compelled in the future; and, upon information and belief, the plaintiff, has been permanently and catastrophically injured.

45.     That by reason of the negligence of the defendant, HUNTER MOUNTAIN SIK BOWL, INC., its agents, servants and/or employees as hereinbefore alleged, the plaintiff suffered injuries in and about her body and limbs including but not limited to a severe spinal cord injury which has left the plaintiff completely paralyzed from the waist down; a T-12 burst injury; hemorrhage along the anterior longitudinal ligament at the level of T-10-L1 and the posterior elements of T12; disruption of the anterior and posterior longitudinal ligaments and ligamentum flavum at the T-12 level; bilateral perched facets at T11 and T12 with widening of the interspinous space; left 5th, 6th, 7th, 8th and 9th rib fractures; deep vein thrombosis of the left soleal vein; thrombophilia; chronic urinary tract infections; neuropathic pain; significant psychological stress and disruption in cognitive processing; post-traumatic stress disorder; neurogenic bladder and bowel; the plaintiff has been forced to undergo numerous painful medical procedures including but not limited to decompression and open treatment of thoracolumbar fracture dislocation of the T11-T12 level, posterior arthrodesis fusion, T12-l1, T11-T12, T10-Tll, posterior instrumentation T10, T11,T12 and L1; allograft and autograft; she has suffered shock to her nerves and nervous system, accompanied by great physical pain and mental anguish; has been confined to her bed and home and has been unable to engage in her usual activities or to attend to her employment; has

been compelled to seek constant medical aid and attention and will be so compelled in the future; and, upon information and belief, the plaintiff, has been permanently and catastrophically injured.

46.     That this action falls within one or more of the exemptions set forth in New York CPLR §1602.

47.     That as a result of the foregoing, the plaintiff, SAMANTHA GOOD has been damaged in the sum of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS.


## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF DARREN LUMBARD

48.     Plaintiff, DARREN LUMBARD, repeats and reiterates each and every allegation of the paragraphs of this complaint numbered "1" through "46" as though fully set forth at length herein.

49.     That at all times herein mentioned the plaintiff DARREN LUMBARD, was and still is the husband of the plaintiff SAMANTHA GOOD.

50.     That as the husband of plaintiff SAMANTHA GOOD, the plaintiff DARREN LUMBARD, was and still is entitled to the services, society and companionship of his wife, SAMANTHA GOOD.

51.     That as the result of the aforesaid occurrence plaintiff DARREN LUMBARD, has been and continues to be deprived of the services, society and companionship of his wife, the plaintiff, SAMANTHA GOOD, and has been and will be compelled to seek medical aid and attention for his said wife and become liable therefore.

52.     That as a result of the foregoing, the plaintiff, DARREN LUMBARD, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

**WHEREFORE,** the plaintiffs demand the following relief:

(1)      That judgment be entered in favor of the plaintiff, SAMANTHA GOOD, on the first cause of action in the amount of ONE HUNDRED MILLION ($100,000,000.00) DOLLARS,

(2)      That judgment be entered in favor of the plaintiff, DARREN LUMBARD, on the second cause of action, in the amount of TEN MILLION ($10,000 000.00) DOLLARS,

(3)      That the plaintiffs be awarded interest, costs, disbursements and attorneys' fees and

(4)      That the plaintiffs be awarded such other, further and different relief as to the Court may be just, proper and equitable.

Dated: New York, New York
       December 18, 2019

Yours, Etc.,
 PRONER & PRONER
*Attorneys for Plaintiff*
/S/ Mitchell Proner (515644)
MITCHELL PRONER (515644)
60 East 42nd Street
New York, New York 10165
212-986-3030